# East End Savings & Trust Company, Appellant, *v.* Chadwick.

*Contract—Sale—Offer—Withdrawal of offer.*

In an action by a trust company against executors for breach of a contract to sell a mortgage belonging to the estate, it appeared that one of the executors made an offer to the president of the trust company to sell the mortgage to the company at a price named, but before there was any acceptance in writing or otherwise, he called up the president on the phone, and according to his own testimony stated to the president that he called off the sale of the mortgage. The president testified that the executor's words were, that he wanted to withdraw from the mortgage proposition. Both executor and the president testified to the effect that the president said to the executor that the executive committee of the board had approved of the purchase, but that he wanted to get the directors together to have their approval also. It appeared as a fact that the written notice of the acceptance was not prepared or mailed until after the meeting of the directors. *Held*, that the question whether defendants had withdrawn the offer before the acceptance was a question for the jury and that a verdict and judgment for the defendants should be affirmed.

Argued Oct. 20, 1908. Appeal, No. 55, Oct. T., 1908, by plaintiff, from judgment of C. P. No. 2, Allegheny Co., Oct. T., 1908, No. 447, on verdict for defendants in case of East End Savings & Trust Company v. May Chadwick and F. W. McKee, executors and trustees under the last will of Samuel Chadwick, deceased. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, ELKIN and STEWART, JJ. Affirmed.

Assumpsit for breach of contract to sell a mortgage. Before YOUNG, J.

The facts are stated in the opinion of the Supreme Court.

Verdict and judgment for defendants. Plaintiff appealed.

*Errors assigned* were various instructions.

*W. T. Tredway,* for appellant, cited: Scottish Rite, etc., Aid Assn. v. Union Trust Co., 195 Pa. 45; Winans v. Bunnell, 13 Pa. Superior Ct. 445; Loeb v. Mellinger, 12 Pa. Superior Ct. 592.

*John P. Hunter,* of *Lyon, Hunter & Burke,* with him *Sion B. Smith,* for appellees, cited: Bosshardt & Wilson Co. v. Crescent Oil Co., Ltd., 171 Pa. 109; Vincent v. Woodland Oil Co., 165 Pa. 402; Lansdowne v. Light & Power Co., 206 Pa. 188; Hudson v. Buck, L. R. 7 Chan. Div. 683; Hussey v. Horne-Payne, L. R. 8 Chan. Div. 670; Corcoran v. White, 117 Ill. 118 (7 N. E. Repr. 525).

OPINION BY MR. JUSTICE STEWART, January 4, 1909:

The action was for the recovery of fixed damages for an alleged breach of contract. The case afforded but narrow ground for controversy; it turned on a single question of fact, easy and simple of determination under the evidence. Which antedated the other, the withdrawal by defendants of their offer to sell, or the notice to the defendants of the plaintiff's acceptance of their offer? If the latter was first in point of time, then the negotiation between the parties had ripened into a contract binding on the defendants, and the plaintiff would be entitled to recover; if the former, then no contract resulted and plaintiff was without cause of action. And this is exactly the way the case was submitted to the jury. The subject of negotiations between the parties was a $70,000 mortgage held by the estate of Samuel Chadwick, deceased. Mr. McKee, one of the executors, called on Mr. Rush, president of the trust company, on the evening of June 15, 1901, and proposed to sell the mortgage, stating the price demanded. Rush asked him to put the offer in writing so that he could submit it, using his own language, "to the Bank folks," and promised an answer in a very few days. This was on Saturday. On the morning of the following Tuesday McKee called at the office of the company, and left with Rush a note addressed to him as president which, after indicating the mortgage and describing the property on which it was a lien, reads as follows: "The

heirs wish to dispose of this mortgage and would be willing to give a bonus of $5,000 to the purchaser, or would take $65,000 for the $70,000 mortgage.—Please submit this to your Board, and let me know at your early convenience, and oblige," etc. Between eight and nine o'clock of the following Thursday morning McKee called Rush over the phone, and a conversation ensued between them in regard to the matter. They do not entirely agree as to what was said by each. According to Rush's version, McKee said, "I want to withdraw the Chadwick mortgage proposition," to this Rush says he replied, "You don't mean it, Mr. McKee, our executive board has acted on this and we are going to take it, and I want to get some directors together and have the approval of the directors also." After reciting some other parts of the conversation not necessary here to repeat, he says, "That is about the gist of the conversation; except that McKee said, 'Well, I'll see you again, and I said, all right.'" McKee testified that what he said to Rush was, "I call you up to say I call off that proposition I made you the other day in regard to the Chadwick mortgage;" that to this Rush replied, "Oh, you can't do that, we are going to take it;" that he answered back, "Oh, yes, I can; you have made no answer to my offer up to this time. I have a right to recall the offer at any time before it is accepted by you;" that Rush then said, "Our committee has met and passed on it, and we are going to have a meeting of the board this afternoon, and I feel sure they will take it;" that to this McKee replied, "Well, Mr. Rush, I am sorry but you are too late, I have another party," etc. In the course of the same morning McKee called at the office of the trust company. His conversation there was with the secretary, Rush not being in at the time. According to the testimony of this officer McKee expressed himself in regard to the withdrawal of the offer in very much the same language as Rush says he used when conversing with him over the phone; that is, that he said he came to withdraw his offer, and wanted to withdraw it. The variance is unimportant. Whether McKee said he "called off" the offer of the mortgage, or "wanted to call it off" to the ordinary mind the meaning would most likely be the same, denoting

in either case a withdrawal. But however this may be, the jury either accepted the latter expression as the equivalent of the former, or else accepted McKee's version of the conversation; for by their verdict they found that in these conversations McKee had withdrawn his offer. Now what does the evidence show with respect to the acceptance of the offer by the plaintiff? The time of the acceptance is important only as it aids in determining when notice of the acceptance was given the defendants; for until such notice was given, defendants were free to withdraw their offer if they so chose. If acceptance came only with the approval of the members of the board who were called together in the afternoon to consider the offer, then it necessarily follows that defendants' withdrawal of their offer preceded their receipt of notice of acceptance. It is a fact in the case that the written notice of acceptance was not prepared or mailed until after the meeting of the directors in the afternoon. The contention of appellant, however, is that the approval of the offer by the executive committee of the board was an acceptance of it, and that the fact of such approval was communicated to McKee by Rush in the conversation over the phone, before McKee had made any direct and unequivocal withdrawal. It is wholly immaterial whether this committee had or had not the power under the laws of the company to take final action with respect to matters of this kind. That its action in this particular case was not conclusive, and was not so regarded by Rush, appears from his own testimony. In his conversation with McKee he told him that notwithstanding the committee's approval of the offer, he yet wanted the approval of the board of directors, and that he would call them together that afternoon for the purpose. How in the face of such testimony as this can it be contended for a moment, that the action of the committee was an acceptance by the plaintiff, or that Rush intended his statement of the fact to McKee as a notification of acceptance? It is this latter feature that has special significance. If Rush did not understand the action of the committee to be acceptance,—and we have his own word for it that he did not,—he could not have intended that McKee should understand from what he said

about the committee that his offer had been accepted. Clearly, it was not a notice of the company's acceptance, and was not so intended. There was nothing in the case which would have warranted a finding that there was an acceptance of the company within the understanding of any of the parties, until the afternoon of the day when the members of the board who were called together for the purpose gave their approval. This acceptance came too late; defendants' offer had then been withdrawn.

It required much ingenuity to construct from this record a dozen assignments of error. That is the number here; we have carefully examined them all, and each has been sufficiently answered in what we have said. Special separate consideration is unnecessary. The case turned upon questions of fact, and these were submitted to the jury in a very careful charge, free of all error. The assignments are overruled.

Judgment affirmed.